## THE DASORI.[1]

## THE STERLING.

### DURYEA *et al. v.* MAYOR, ETC., OF THE CITY OF NEW YORK.

#### (*District Court, S. D. New York.* June 15, 1891.)

1. COLLISION—HELL GATE—MIDDLE PASSAGE—RIGHT OF WAY—DUTY OF ASCENDING
   BOAT.
       A tug, with a tow on a hawser, coming towards New York through the middle
   passage of Hell Gate on the ebb-tide, has the right of way over a tug with a light tow
   along-side, bound through Hell Gate into the Harlem river, and it is the duty of the
   latter tug, on an interchange of one whistle between the vessels, to take the east-
   ern channel, or at least to wait below, in a place that is well out of the way of the
   descending tow.
2. SAME—TOWING ON HAWSER—TOWING ALONG-SIDE.
       The comparative safety of towing through Hell Gate on a hawser and along-side
   considered.

In Admiralty.   Suit for damage by collision.
*Carpenter & Mosher*, for libelants.
*James M. Ward*, Asst. Corp. Counsel, for respondents.

BROWN, J.   At about half past 2 o'clock in the afternoon of December
23, 1889, as the libelants' two-masted schooner Highland, in tow of the
tug Sterling, on a hawser of from 30 to 35 fathoms, was coming west-
ward on the ebb tide through Hell Gate by way of the middle passage be-
tween Flood rock and Mill rock, she came in collision with the respond-
ents' steam-tug Dasori, which had a light scow in tow along-side, and
was bound up the Harlem river.   The schooner was struck on the port
side, near her main chains, and sustained damages for which the above
libel was filed.   As the tug in tow passed Hallett's point, there was an-
other tug, the Temple, with a three-masted schooner in tow on a hawser
ahead of them, which went around the north side of Mill rock by way
of the main ship channel; and the Sterling, instead of going behind the
Temple, preferred to take the middle passage, which, since it was blasted
out about two years ago, has become the easiest, the most direct, and the
safest course for such vessels coming westward on the ebb-tide.   The Da-
sori at that time was in the vicinity of Horn's hook, some little distance
out in the river, having come past Blackwell's island by the northerly
channel.   When the Sterling was about to enter the middle passage,
which the Dasori perceived, a signal of one whistle was exchanged be-

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

tween them, indicating that each was to keep to the right. The witnesses for the Dasori contend that she did so; that she went into comparatively slack water some 200 or 300 feet only to the south-west of Flood rock, very near the edge of the eddy formed by the three currents that come down the easterly, the middle, and the northerly channels; that she held her position there substantially without change; and that the collision was caused by the sagging of the schooner to the southward down upon the Dasori, when the schooner struck the Harlem river tide coming out of the middle passage. The contention of the libelants is that the Darosi was all the time making headway; and that, in consequence of a port wheel, or of the effects of the tide current of the middle passage, or both combined, she turned so far to the northward and westward as to strike the schooner with her stem nearly at right angles. The captain of the Dasori, who is the defendant's only witness as respects her navigation, insists that the blow at collision was nearly parallel, by the sagging of the one against the other. The proof as to the nature of the damage is scarcely sufficient to determine with certainty that the blow was made by the stem of the Dasori; although it would seem less probable that the blow was simply a side blow, as the latter's witnesses contend. Without reference to that, however, and upon broader principles, I think the Dasori, and not the tug or schooner, must be held in fault for this collision. It was the duty of the Dasori to keep out of the way of the tug and tow. The latter were coming down with the tide through a difficult passage, and they had the right of way as against the Dasori, which was a powerful tug, coming up from below with a light scow alongside, which she could handle with ease. *The Galatea*, 92 U. S. 439, 446; *The Marshall*, 12 Fed. Rep. 921. It was the duty of the Dasori to remain at a proper and safe place below, or to the eastward, until the tug and tow had passed the point of danger, or else to have gone on by the easterly passage. The account offered by the pilot does not exculpate him; for it is clear from the respondents' own witnesses that the Dasori, if there was any difficulty in remaining out of the way of the tug and tow while they were coming down the middle passage, could easily have gone up the Harlem river by way of the easterly channel between Flood rock and Hallett's point. That course, Mr. Bell states, is pursued with car-floats as much as the course by way of the northerly channel, and it is almost as direct as that channel. The libelants' experts confirm this testimony. Upon an exchange of one whistle, therefore, that channel was the proper course for the Dasori to follow. *City of Hartford*, 7 Ben. 350; *City of Springfield*, 26 Fed. Rep. 158, 160. The position where the Dasori chose to wait, according to her own testimony, until the schooner had passed, instead of proceeding up the easterly channel, was voluntarily chosen, and in no way forced upon her. She took the risks, therefore, of that situation, unless she proves fault in the schooner, which I do not find proved. There is no evidence that the schooner was not steered with ordinary skill. The libelants' witnesses say she followed the tug, and there is no proof that she sagged much out of line with the tug. There is nothing in the circumstances, so far as appears, different

from usual; and if, as the Dasori's pilot states, the collision was in the slack water near the edge of the Harlem river tide, and on the edge of the eddy, that position, as the result proves, was an unsafe one, which she ought not to have assumed. He had no right to suppose that the schooner would hold a perfectly straight course, unaffected by the change of the current. That was impossible. Some sagging by both the tug and the tow on entering the Harlem river tide was unavoidable, and was to have been anticipated by the Dasori, even if the latter had remained substantially at rest. I do not think it at all probable, however, the collision occurred simply by the sagging down of the schooner, nor by a parallel blow. It is more probable that the first impact was with the stem or bow of the Dasori at a considerable angle, as the libelants' witnesses testify; and that the Dasori, in the eddy and whirlpool below Flood rock, got a swing that she did not or could not counteract. Instead of stopping there, she could have gone onward by the easterly channel. So far as I can perceive, it was not possible for the collision to happen in the edge of the eddy or slack water where Capt. Golden supposed it happened. The schooner, coming down in the full tide of the middle passage, with an additional speed of about four knots through the water, must inevitably have entered a considerable distance into the Harlem river current. She could not have sagged into the slack water at the edge of it. So that the collision must have been in the full current, either of the middle passage or of the Harlem river tide, and not in any eddy or slack water below Flood rock. Upon the contradictory evidence as to the comparative safety of towing through Hellgate upon a hawser or along-side, it does not seem necessary to express any opinion. Both methods of towing have been practiced so long, and by pilots of such competency and repute, that, though the advocates of each mode assert their preferences strongly, I do not feel warranted in adjudging either to be in itself faulty, or proof of negligence. *The Josephine B.*, 45 Fed. Rep. 909. Each method has its own difficulties. Nor does experience show any decided preponderance of accidents arising in one class of cases more than in the other class. The causes of collision, and the modes of avoiding them, are generally found to be independent of either mode of towing, and such is the case here. Decree for the libelants, with costs.